FREDERICK C. IRELAN, Executor of the Will of Margaret Noble Hammond, Deceased,

*vs.*

HARRY NOBLE HAMMOND, ELLA NOBLE DEAN, MARY I. JEFFRIES and LIDA N. IRELAN.

*New Castle, April 8, 1942.*

*Alexander Jamison,* and *George L. Lochboehler,* of Baltimore, Md., for complainant.

*William Poole,* for Harry Noble Hammond, a respondent.

*John S. Walker,* for the other respondents.

THE VICE-CHANCELLOR: Margaret Noble Hammond

executed her will in 1934. She then owned thirty-two shares of *"full-paid"* stock of the Keystone Building & Loan Association, having a total face value of $6,400. She also held ten shares of *"installment"* stock of the same loan association, having a matured value of $2,000, and upon which she had begun paying monthly installments in 1929. When these matured in 1936, the testatrix surrendered them and received in return the sum of $2,000. At the time of her death in 1939, she still owned the thirty-two shares of full-paid stock. The question here is whether the gift to her son under the sixth item of her will should be construed to embrace the full-paid stock; or, whether it should be construed to specify the installment stock only, with the result that the gift would be adeemed. The item in dispute reads thus:

"Sixth: I give and bequeath to my son Harry Noble Hammond all the money due and to become due and payable upon the maturity or the surrender of my shares in the Keystone Building & Loan Association, of Chester, Pennsylvania, together with all my right, title and interest in and to the said shares, which have a matured value of Two Thousand Dollars."

The son, a respondent, has answered the executor's bill for instructions and claimed the full-paid shares. The other three respondents, who are daughters of the testatrix, have answered the bill and claimed that these shares should be divided equally among testatrix' four children pursuant to the provisions of the following item of the will:

"Eighth: If it shall be found that I have left any property not mentioned in this will, that property, whatever it may be, shall be divided equally among my four children."

The son relies heavily upon the case of *Knight v. Knight*, 5 *Boyce* 570, 96 *A.* 32. A syllabus of the opinion states the facts and holding as follows:

"Testatrix, who under her father's will had been devised a certain described farm, and who thereafter purchased a tract of 19 acres adjoining the farm and annexed it to and treated it as a part of the farm, devised to a son, all the farm or tract containing 245 acres, and con-

cluded her devise by saying that it was the same farm or tract which had been devised to her by her father. Held that, as the main description was complete in itself, the concluding language was merely a recital, and not a part of the description; and that, even if construed as descriptive of the farm, it would not restrict the complete and adequate description which preceded it; and hence that her devisee took such 19-acre tract."

The son asserts that the rule stated in the cited case with respect to a devise is equally applicable to a bequest, and is determinative of the present issue. He refers to the following quotation from the opinion:

"* * * Where a devise contains a general description sufficiently definite to carry the whole of a tract of land, the effect of this general description will not be limited because the devise also contains super-added words of particular description which would apply only to a portion of the tract."

He contends that in the sixth item there is a general description of the subject of the gift, which is broad enough to include both kinds of stock, in these words: "all the money due and to become due and payable upon the maturity or the surrender of my shares in the Keystone Building & Loan Association * * * together with all my right, title and interest in and to the said shares, * * *." The remainder of the sentence, reading: "which have a matured value of Two Thousand Dollars", he characterizes as super-added words which should not effect a limitation of the general description. It seems to me that, unlike the *Knight* case, the qualifying language here is "so closely connected and interwoven with the first description as to form a part of the description and restrict the general description." Only the installment shares had a "matured value" in the ordinary sense of that expression. The full-paid shares could hardly be said to mature, because as their name implies, they were paid for in one sum and were redeemable at any time at face value, upon complying with certain requirements of notice. In contrast, the installment shares were intended to be and were in fact paid for over a period, and had a

"matured value" which differed, in that it was greater, from their value at any time prior to "maturity". Consequently, in the last clause of the sentence, the expression "matured value" was appropriate to describe the installment stock, not the full-paid stock; and the amount stated as the matured value likewise fitted the installment stock, because the shares of this class owned by the testatrix at the date of her will had a matured value of exactly two thousand dollars. The qualifying clause is not only a part of the same sentence containing the so-called general description, but also it is consistent with, and indeed, makes clear the use of the language "upon the maturity or the surrender of my shares," which appears in the general description itself. The conclusion seems unescapable that by a single description made up of correlated components, the testatrix designated specific property, the shares of installment stock, which she owned when she executed her will.

In his argument, the son urges that here, as in the *Knight* case, the will discloses an intention of the testatrix to dispose specifically of every part of her property. This manifestation of intent is entitled to consideration; but it does not warrant the distortion or enlargement of a definitely restrictive description, particularly where the will contains a gift of residuary property.

It follows that the testatrix' surrender of her installment stock worked an ademption of the gift under the sixth item. *Curtis v. Curtis*, 23 Del. Ch. 27, 2 *A.* 2d 88. The shares of full-paid stock, which were not specifically bequeathed, pass under the terms of the eighth item of the will.

A decree accordingly will be advised.